KELLOGG v. KELLOGG.

1. PRACTICE—INSTRUCTIONS—DISCRETION.

In equity cases the findings of a jury are simply advisory, and the court, in its discretion, may modify them or set them aside and substitute its own conclusions upon the facts as well as the law. In these cases the giving or refusing to give instructions is within the discretion of the court, and its action in this regard is not subject to review.

2. MARRIED WOMEN.

A married woman is not under the restraints or disabilities of coverture imposed by the common law. She may deed her property directly to her husband without consideration if she so desires, but such transactions are scrutinized with great care.

3. DURESS—EQUITY.

Courts of equity always interfere to relieve from a conveyance for an inadequate consideration extorted by threats sufficient to overcome the will of the grantor.

4. SAME.

A man who acquired his wife's property by means of a conveyance extorted by him from her by threats that unless she gave him the deed he would take their children from her and she would never see them again, should be compelled to reconvey.

5. HUSBAND AND WIFE—CUSTODY OF CHILDREN.

The right to the custody of small children as between father and mother depends upon a variety of circumstances, the good of the children being a paramount consideration.

*Appeal from the District Court of Garfield County.*

Mr. J. L. HODGES and Mr. J. W. DOLLISON, for appellant.

No appearance for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The parties, plaintiff and defendant, were, at the time of the transaction complained of, husband and wife, and the plaintiff seeks relief from her husband from a conveyance made directly from her to him, on the ground that he exercised an undue influence over her, and thereby acquired an unconscionable advantage.

It appears from the evidence that plaintiff and defendant had been living together as husband and wife up to the day before the execution of the deed, when the plaintiff for some reason left the home of the defendant and separating herself from him took lodgings at a hotel near by. She at this time had in her custody and control two small children, the issue of her marriage with the defendant, the eldest being four years of age and the youngest a mere infant.

The defendant learning of her whereabouts sought an interview with her for the ostensible purpose of recovering a suit of clothes that the plaintiff had inadvertently carried away with her effects, and also two deeds belonging to the defendant. It is apparent, however, from the evidence that the main, if not the sole, purpose of this interview was to procure from the plaintiff a deed to the property here in controversy, the same being described as lots numbered one and two in block G in the town of Rifle, in Garfield county, this property being the sole and individual property of the plaintiff. At first she objected to deeding the property to the defendant. Thereupon, according to the evidence of the plaintiff and her witnesses, he told her unless she executed to him a deed to the property that he would take the children from her and she would never see them again. Plaintiff states that she was so frightened by this threat that she finally deeded the property to her husband in order to retain the custody of the children.

The defendant denies making threats as claimed by plaintiff and alleges that the deed was made by the plaintiff as her free and voluntary act. The question of fact thus raised was submitted by the court to a jury by the following interrogatories :

Q. " Was the plaintiff induced by threats to execute the deed mentioned in complaint ? "

Q. " Was the plaintiff in such distress of mind and heart at the time of the execution of the deed as to affect or destroy the freedom of her will?"

Both of these questions were answered in the affirmative. The findings of the jury upon these questions of fact were adopted by the court, and a decree rendered requiring the defendant to deed the property to plaintiff. There is abundant evidence in the record to sustain these findings, and under the well settled practice they cannot be disturbed in this court. A reversal of the decree is, however, urged, *first*, on account of the refusal of the district court to instruct the jury upon the law at appellant's request ; and, *second*, upon the claim that the judgment of the court below was contrary to law.

As to the first of these assignments of error, it is only necessary to call attention to the fact that this being a case in the nature of an equity case, the action of the jury was simply advisory, and the court in its discretion might have modified the findings, or set the same entirely aside and substituted its own conclusions upon the facts as well as the law. In these cases the giving or refusing to give instructions is within the discretion of the court, and its action in this regard is not subject to review. *Porter v. Grady, ante,* p. 74..

Coming now to the second branch of the discussion, the law is well settled in this state that a married woman may dispose of her property, real and personal, without reference to any restraint or disabilities of coverture imposed by the common law. She may in all respects treat the property as if she were sole, deeding the same directly to her husband without consideration, if she so desires, but such transactions are scrutinized by the courts with great care. In this case

the jury found that the deed was forced from the wife by threats made by the husband. It appears that she was not therefore free to exercise her own will in the transaction, but acted merely as an agent of the grantee in executing the deed. He, a strong, vigorous man; she, a weak woman, with two small children clinging to her for support. The custody of those children was more precious to her than wealth and it should not be a matter of surprise that she yielded to his threats and deeded to him the only property she possessed, outside of her wearing apparel. The evidence shows that the value of this property at the time was not less than fifteen hundred dollars, while the only consideration paid or promised was the sum of ten dollars which he gave her to meet her present necessities. A more unconscionable transaction cannot well be imagined. Courts of equity always interfere to protect the weak against the strong and relieve from a conveyance for an inadequate consideration, extorted by threats sufficient to overcome the will of the grantor. *Turner v. Turner*, 44 Mo. 535; *Anthony v. Hutchins*, 10 R. I. 165; *Yard v. Yard*, 27 N. J. Eq. 114; *Taylor v. Taylor*, 8 How. (U. S.) 183.

It is urged in this case that the father, being the natural custodian of the children, had a right to take them from the mother, and that his threat to do a thing lawful in itself cannot be made the basis for setting aside a conveyance. In answer to this argument it is to be said:

*First*: That the right to the custody of small children as between father and mother depends upon a variety of circumstances, the good of the children being a paramount consideration, and it is not to be taken as undisputed that the father is entitled to such custody in all cases, and where the custody is awarded the father, provision is made for visits by the mother, while here the threat was that the mother should never again see the children.

*Second*: If it be conceded in this instance that the father had the right to take the children, he cannot justify coercing the mother into stripping herself of all her property upon any

such flimsy pretext.   It is not pretended that the deed was given in consideration of the custody of the children remaining with the mother.   The father was just as much at liberty to claim the children after the deed was executed and delivered as before.

The judgment seems to be clearly right and must be affirmed.

*Affirmed.*